512 So.2d 417 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Nicolas ESTIVERNE.
No. 86-B-1229.
Supreme Court of Louisiana.
September 9, 1987.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, and Philippi P. St. Pe, Metairie, for applicant.
Nicholas Estiverne, pro se.
Vernon P. Thomas, New Orleans, for respondent.
LEMMON, Justice.
This is a disciplinary proceeding against a Louisiana attorney. The principal question is the extent of the penalty to be imposed upon respondent for violation of the disciplinary rules by making harassing telephone calls to two doctors who had examined respondent's client.
The incident arose in the course of respondent's representation of Leroy Thomas in connection with a worker's compensation claim. After Thomas had undergone medical treatment for several months by a general practitioner, the doctor recommended hospitalization and extensive testing. At the request of Thomas' employer's insurer, Thomas agreed to undergo an independent medical examination by an orthopedic surgeon.
*418 Dr. Arthur Kleinschmidt examined Thomas on April 10, 1985, but did not issue a report immediately or discuss his findings with Thomas. Six days later, Thomas went to the hospital adjacent to Dr. Kleinschmidt's office and requested emergency hospitalization. Dr. Joseph Frensilli, Dr. Kleinschmidt's associate, examined Thomas and concluded that there was no need for emergency hospitalization, recommending that Thomas consult his regular physician.
That afternoon Thomas went to respondent's office and complained about the lack of treatment by the examining physicians.[1] Respondent then made the telephone calls which form the basis of this proceeding.
At the investigatory hearing both doctors testified that respondent threatened to file a medical malpractice action against them if they issued a negative report. Respondent, while admitting the threat, testified that he told the doctors that it was wrong for them to give a final diagnosis after a single examination when the treating physician was unable to do so after more than ten visits.[2] Respondent further stated that he has never asked any doctor for a favorable report and had no intent to harass or intimidate these doctors, but at most was overzealous in representing poor people in worker's compensation cases.
On the basis of the testimony at the investigatory hearing, the Bar Association instituted this proceeding. The single specification charged that respondent, by threatening to file a medical malpractice action without any basis for doing so, "asserted a position or [took] other action on behalf of [his] client when [respondent] knew or when it was obvious that such action would serve merely to harass or maliciously injure" the doctors. The specification further alleged that respondent's conduct constituted a violation of Disciplinary Rules 7-102(A)(1) and (2) and 1-102(A)(4), (5) and (6) of the Code of Professional Responsibility, which at the time of the incident provided as follows:
"DR7-102 Representing a Client Within the Bounds of the Law
"(A) In his representation of a client, a lawyer shall not:
"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
"DR1-102 Misconduct
"(A) A lawyer shall not:
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."[3]
*419 At the commissioner's hearing, the Bar Association introduced the evidence from the investigatory hearing, and neither side presented any additional evidence. Speaking on his own behalf, respondent admitted that his conduct was wrong and apologized for the incident. He stated that he had no intent to defraud anyone, but had been "overwhelmed" by his culture (being born and raised in Haiti) and his customs and had said things that others would not say.
The commissioner concluded that respondent had violated Disciplinary Rule 7-102(A)(1) by asserting a position on behalf of his client which he should have known would serve to harass or maliciously injure the doctors.[4] However, the commissioner further concluded that respondent did not have the intent to violate the disciplinary rule and that his actions were not truly calculated to cause injury. Based on his findings of fact and on these conclusions, the commissioner recommended that respondent be issued a public reprimand and ordered to apologize to the complaining physicians.
The Bar Association concurred in the commissioner's findings of fact and conclusions of law, except for the commissioner's conclusions relative to the violation of Disciplinary Rules 1-102(A)(5) and (6) and the recommendation of penalty. The Association argues in this court that a suspension of three to six months is warranted by the proved misconduct.
On the other hand, respondent's counsel points to respondent's foreign background as a mitigating circumstance and argues that respondent's misconduct was attributable to the cultural gap and to his lack of understanding of the nuances of the English language, as well as to his inexperience in the practice of law. Counsel admits that respondent was wrong and that some discipline should be imposed, but argues that respondent's reputation for integrity and his otherwise unblemished record warrant a conclusion that the penalty should not be greater than a public reprimand. Counsel argues that this penalty will serve to protect the public and to preserve the integrity of the legal profession, which are the basic goals of disciplinary proceedings.
We agree with the Bar Association that respondent's conduct violated Disciplinary Rules 1-102(A)(5) and (6) as well as 7-102(A)(2). Not only did respondent assert a position without justification which he should have known would serve merely to harass the doctors, but also he engaged in conduct which was prejudicial to the administration of justice and which adversely reflected on his fitness to practice law. In a hasty and imprudent reaction to pressure from his client, he stated his displeasure to the doctors with their medical conclusions and expressed a rash judgment as to the doctors' competency. His imprudent and injudicious behavior added pressure to an already strained relationship between two highly esteemed professions. This reckless disregard for basic standards of professional conduct warrants some disciplinary action.
Nevertheless, we also agree with the commissioner's conclusion, which is borne out by a fair evaluation of the evidence, that there was no dishonesty or deceit involved in this case.[5] Respondent could hardly have expected that the doctors would change their opinions as a result of his call, and the call appears to have been intended more as a personal affront to the doctors' standards of professional conduct than as an attempt to influence the doctors to change or alter their testimony.[6] Thus, there was no attempt to bargain with a witness to give false testimony, as occurred in Florida Bar v. Lopez, 406 So.2d 1100 (Fla.1982).[7] Moreover, there is additional mitigation in that respondent expressed remorse and apologized once he *420 realized the impropriety of his conduct and in that he was not born or raised in this country.[8] We therefore agree with the disciplinary penalty recommended by the commissioner.
Accordingly, it is ordered that respondent Nicolas Estiverne be and he hereby is publicly reprimanded for his violations of the Code of Professional Responsibility and that he formally apologize to the complaining physicians for his misconduct. All costs of these proceedings are assessed to respondent.
DENNIS, Justice, concurs in the finding of violations but dissents from the selection of his sanction.
I cannot believe that the respondent did not advert to the possible effect his threats could have upon the potential medical witnesses' testimony. Respondent's two separate deliberate threats to doctors to file malpractice actions against them because of their unfavorable diagnoses of his client's condition warrants more discipline than a reprimand.
NOTES
[1] Thomas testified at the investigatory hearing that Dr. Frensilli did not examine him or even touch him and simply told him that nothing was wrong with him.
[2] In his letter of explanation to the Bar Association, respondent stated:

"Both Doctors tried to issue final diagnosis to the insurance company on the case involving my client Leroy Thomas. I indicated to both Doctors that if either one can issue final diagnosis on a case like this one after only one visit, I shall file malpractice suit against them because the Doctor who has been seeing the client and who has seen him more than ten (10) times has not been able to issue a final diagnosis. Therefore, you better be very careful about this, because I do not know of any case where a final diagnosis was ever issued after one single visit, and I then hang-up the telephone."
Whatever the distinction, if any, between a threat conditioned upon a negative report and one conditioned upon a final diagnosis, Dr. Frensilli supported respondent's version to some extent by testifying that respondent "notified me that if I sent in a negative report on just this one examination, he was starting legal proceedings against me for malpractice."
[3] The Rules of Professional Conduct, effective January 1, 1989, have replaced the Code of Professional Responsibility. However, respondent's alleged misconduct occurred before the adoption of the new rules.
[4] The commissioner found no violations of the other disciplinary rules.
[5] The Bar Association did not oppose the commissioner's finding that there was no violation of Disciplinary Rule 1-102(A)(4) pertaining to dishonest, fraudulent or deceitful conduct.
[6] Although the doctors held up their reports after respondent's call, both doctors eventually testified on behalf of the insurance company in the trial of Thomas' compensation claim.
[7] The Bar Association urges that a suspension is appropriate under the Standards for Imposing Lawyer Sanctions § 6.3 (1986), relating to improper communications with individuals in the legal system. While Standard 6.3 generally pertains to communications which attempt to influence, Standard 6.33 states that reprimands are generally appropriate when the lawyer is negligent in determining the propriety of the communication and causes potential interference with the outcome of a legal proceeding.
[8] Mitigating factors appropriate for consideration in a lawyer disciplinary proceeding and applicable to the present case include remorse, absence of a prior disciplinary record, absence of a dishonest or selfish motive, and inexperience in the practice of law. Standards for Imposing Lawyer Sanctions § 9.32 (1986).